**NORTON ROSE FULBRIGHT**

November 29, 2017

**Via ECF and Email**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
United States

**William Leone**
**Partner**
Direct line +1 212 318 3324
william.leone@nortonrosefulbright.com

Tel +1 212 408 5100
Fax +1 212 541 5369
nortonrosefulbright.com

Re:   *SEC v. Genovese, et al.*, No. 17-cv-05821-RJS

Dear Judge Sullivan:

We respectfully submit this letter on behalf of our client, Abraham Mirman ("Mirman"), a defendant in the above-captioned action, to request a pre-motion conference, in accordance with Rules 1.A and 2.A of Your Honor's Individual Rules and Practices, and to provide the basis for Mirman's anticipated pre-Answer motion to dismiss plaintiff Securities and Exchange Commission's claims against Mirman pursuant to Federal Rule of Civil Procedure 12(b)(6).

The SEC's action arises from an alleged "penny stock promotion, manipulation and unlawful distribution scheme," purportedly orchestrated by defendant Robert Genovese ("Genovese") and his company, defendant B.G. Capital Group, Ltd. ("BGC"), between 2010 and 2012.  Compl. ¶¶ 1, 2.  Mirman did not work for Genovese or BGC.  Mirman was the head of the investment banking department of John Thomas Financial ("JTF").  He worked there for less than one year.  He also holds the licenses needed to be a registered representative.  But, that was not his role at JTF.  JTF was a broker-dealer that Genovese allegedly used to sell his shares in Liberty Silver Corporation ("Liberty Silver").  According to the SEC, Genovese allegedly conspired with Liberty Silver owners and directors (not Mr. Mirman) to secretly give effective ownership and control of Liberty Silver to Genovese, *id*. at ¶¶ 25-42, paid for recommendations about Liberty Silver, *id*. at ¶¶ 5, 90, misled JTF brokers concerning the value and his position in Liberty Silver, *id*. at ¶ 76, engaged in "wash trades" to inflate Liberty Silver's stock price, *id*. at ¶ 105, and engaged in the unregistered sale or offer of Liberty Silver stock as an affiliate, *id*. at ¶¶ 77, 103. It is undisputed that, and the SEC does not allege, that Mirman never communicated with a buyer of Liberty Silver securities, that Mirman never drafted any sales materials or other communications to buyers of Liberty Silver securities, that Mirman did not draft or participate in the drafting of any publicity concerning Liberty Silver, and that Mirman did not directly cause or participate in any sales of Liberty Silver securities.  Nor does the SEC allege that Mirman controlled the communications to any buyer of Liberty Silver securities in a way that gave him control over any omissions in connection with these transactions.  In short, for purposes of this motion, it must be assumed that Mirman did not instruct, counsel, advise or control what was included in any disclosures to Liberty Silver buyers.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

CPAM: 13074857.4

Hon. Richard J. Sullivan
November 29, 2017
Page 2

Notwithstanding this complete lack of direct involvement by Mirman, that his job had nothing to do with retail sales of stock by JTF brokers, and that he did not own or control JTF's retail sales operations in any way, the SEC now asserts securities fraud claims against Mirman himself.

First, the SEC fails to adequately allege that Mirman was a "necessary participant" or a "substantial factor" in the distribution of an unregistered security in violation of Section 5. The SEC asserts that shares of Liberty Silver stock allegedly registered to a Genovese-controlled entity were improperly offered for sale as unregistered securities by JTF brokers. Compl. ¶¶ 92, 96. As the SEC does not assert that Mirman has himself passed title to an unregistered security, Mirman can only be liable if, as an "indirect participant," he has "engaged in steps necessary to the distribution of [unregistered] security issues." *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) (quoting *SEC v. Chinese Consol. Benev. Ass'n, Inc.*, 120 F.2d 738, 741 (2d Cir. 1941). Under the "necessary participant test" the defendant's participation must be a "substantial factor in the sales transaction" or "but for the defendant's participation, the sale transaction would not have taken place." *Id*. (quoting *SEC v. Murphy*, 626 F.2d 633, 651-52 (9th Cir. 1980)); *see also SEC v. Universal Major Indus.*, 546 F.2d 1044, 1046 (2d Cir. 1976) (finding liability for individual who was "indispensable" to another's sale of stock).

The SEC fails to allege sufficient facts that "but for" Mirman's conduct, the unregistered sale of Liberty Silver's shares would not have occurred. At most, the SEC factually asserts that Mirman received the title of "account representative" for at least one of Genovese's accounts at JTF, but not the account at issue at the time of the alleged misrepresentation, Compl. ¶¶ 8, 71. It also alleges that he received a commission, but not that he received it for any act necessary to the distribution. *Id*. at ¶ 116. Mirman introduced Genovese to JTF and as a result was listed as the registered representative. *Id*. at ¶¶ 45, 69. That status falls fall short of allowing any inference of necessary participation in an unregistered offering. The SEC also alleges that Mirman "introduced Genovese to the sales floor" of JTF before a presentation by Genovese, *id*. at ¶ 49; silently sat in on presentations on Liberty Silver, *see, e.g., id*.; forwarded emails he received from Genovese to the JTF CEO, *id*. at ¶¶ 54, 65; and signed a Broker's Representation Letter under Rule 144 of the Securities Act ("Broker's Letter") in which he affirmed "that he read the representations in [the] Seller's Representation Letter" and that "[a]fter reasonable inquiry, the undersigned is not aware of any circumstances indicating that [the entity at issue] is an underwriter with respect to the transaction or that the sale is part of a distribution of securities of the issuer," *id*. at ¶ 96. That is it. All of the other allegations are either vague or conclusory. Moreover, as further alleged, each of these actions was followed by one or more intervening events that did not involve Mirman. *See, e.g., id*. at ¶ 100.

Second, the SEC fails to adequately allege scienter for violations of Section 10(b), Rule 10b-5 Section 17(a). Scienter is established "by facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999). Reckless conduct constitutes "an *extreme* departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978) (emphasis added and citation omitted). Despite asserting repeatedly that Mirman "knew or was reckless in not knowing" various aspects of Genovese's alleged secret scheme,

Hon. Richard J. Sullivan
November 29, 2017
Page 3

including Genovese's alleged level of ownership and control, his secret payments for favorable coverage, or his wash trades, the Complaint alleges no **_factual basis_** that Mirman had any knowledge whatsoever or was willfully blind to Genovese's actions. Conclusory allegations are insufficient. *SEC v. Cohmad Securities Corp.*, No. 09-5680, 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010). The SEC must allege facts from which a reasonable person can infer scienter. *Id.*

The SEC's assertion that Mirman ignored "multiple 'red flags' indicative of a distribution" is belied by the face of the pleadings. *See* Compl. ¶ 98. Indeed, the SEC alleges that Genovese actively misrepresented himself to Mirman as much as he did to anyone else. *See, e.g.*, ¶¶ 94-95. Moreover, the SEC fails to allege that Mirman had an intent to deceive, manipulate or defraud when he signed the Broker's Letter or otherwise. Even if Mirman did no inquiry, reasonable or otherwise, before he signed the Broker's Letter, the Complaint on its face pleads that Mirman had sufficient reason to believe that Genovese was not affiliated with Liberty Silver. *See id*.

Third, the SEC similarly fails to adequately allege that Mirman knowingly and substantially provided assistance to Genovese's scheme so that he was aiding and abetting violations of Section 10(b), Rule 10b-5 or Section 17(a). Aiding and abetting liability requires a showing of: "(1) the existence of a securities law violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted in the primary violation." *SEC. v. Pimco Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2004) (citations and quotations omitted). As noted above, the Complaint fails to allege any facts that Mirman was aware of the alleged scheme, let alone that he substantially assisted in the conduct constituting the scheme. *See, e.g., Hightower v. Cohen*, No. 08-3229, 2009 WL 9042127 (E.D.N.Y. Sept. 30, 2009) (no aiding and abetting liability where no knowledge of scheme when drafting offering memoranda and opinion letters to investors).

Finally, the SEC fails to adequately allege that Mirman engaged in fraud or was negligent in violation of Section 17(a)(3). *See SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014). As noted above, Mirman had no knowledge of Genovese's alleged scheme and, consequently, could not inform anyone about a scheme he did not know about. Moreover, Genovese's alleged scheme involved alleged representations from Liberty Silver management themselves – the primary source of diligence information regarding ownership issues. Compl. ¶¶ 25-42, 94-95.

For these reasons, Mirman respectfully seeks the Court's permission to file a motion to dismiss. We are available to participate in a pre-motion conference at the Court's convenience.

Respectfully submitted,

/s/ Bill Leone

Bill Leone
Partner

cc:     Counsel of Record (by ECF)