UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 1:17-cv-05821(RJS)

SECURITIES AND EXCHANGE COMMISSION

Plaintiffs,

v.

ROBERT DONALD BRUCE GENOVESE,
B.G. CAPITAL GROUP, LTD., and
ABRAHAM "AVI" MIRMAN,

Defendants.

## DEFENDANTS ROBERT DONALD BRUCE GENOVESE AND B.G. CAPITAL GROUP LTD.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

Defendants Robert Donald Bruce Genovese and B.G. Capital Group Ltd. ("B.G.," and collectively with Mr. Genovese, the "B.G. Defendants"), hereby file their Motion to Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and state:

This is a Securities and Exchange Commission ("SEC" or "Commission") civil action against Mr. Genovese, BCG, and Abraham Mirman, for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. According to the allegations in the Complaint, Mr. Genovese is and was an investor in and promoter of Liberty Silver Corporation ("Liberty Silver"). According to the Commission, Mr. Genovese and BCG, along with Mr. Mirman, purposely worked together to promote the stock price of Liberty Silver and then Mr. Genovese and/or BCG sold some of their shares of Liberty Silver, somehow profiting from a slight increase in share price. Because the Complaint fails to meet the pleading requirements of securities fraud, it should be dismissed.

**Factual Background**

Defendant Robert Donald Bruce Genovese is the principal of Defendant B.G. Capital Group, Ltd. Complaint, ¶ 17. The Complaint alleges that the B.G. Defendants purchased, sold, managed and marketed shares of Liberty Silver, either directly or through one or more affiliated entities, beginning in 2010. Complaint, ¶¶ 35-42. According to the Complaint, in 2012, the B.G. Defendants engaged in fraudulent activity by, at bottom, buying and selling shares itself, while marketing shares to investors. In particular, the Complaint alleges that the B.G. Defendants were selling Liberty Silver shares to investors at a time when they intended to buy and/or sell shares in the same company, without disclosing the B.G. Defendants' supposed "true intentions." Complaint, ¶¶ 52, 62, 67, 75. But the Complaint fails completely to allege how the B.G. Defendants "intended" to do anything detrimental to its clients, fails to allege how those clients were misled, and most definitely fails to allege any of these things with the specificity that is necessary to meet the pleading standard for securities fraud. For these reasons, the Complaint should be dismissed.

**Legal Arguments**

**A. The Complaint Fails to Meet the Pleading Standard for Securities Fraud.**

In a federal securities fraud case, a "complaint based on misstatements and omissions cannot survive a motion to dismiss where the complaint fails to explain why those statements and omissions were fraudulent." *Wilbush v. Ambac Fin. Grp., Inc.* -- F. Supp. 3d --, 2017 WL 4125364, *5, Fed. Sec. L. Rep. P 99, 868 (S.D.N.Y. Sept. 5, 2017) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 93 F.3d 87, 99 (2d Cir. 2007)). More specifically:

> Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b) by stating with particularity the circumstances constituting fraud. Under the PSLRA, the complaint must specify

2

each statement alleged to have been misleading, and the reason or reasons why the statement is misleading, and state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. Therefore, while we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because the PSLRA requires particular allegations giving rise to a strong inference of scienter."

*Id.*, -- F. Supp. 3d --, 2017 WL 4125364, Fed. Sec. L. Rep. P 99, 868 (S.D.N.Y. 2017) (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). With respect to omissions specifically, a federal district court recently explained the pleading standard regarding omissions that "A[n] omission is actionable under federal securities laws only when the defendant is subject to a duty to disclose the omitted facts." *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 462 (S.D.N.Y. 2017) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).

Even though Rule 10b–5 imposes no duty to disclose all material, nonpublic information, once a party chooses to speak, it has a "duty to be both accurate and complete." *Id.* (citing (*Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002)). "[A]n entirely truthful statement may provide a basis for liability if material omissions related to the content of the statement make it ... materially misleading." *Id.* (citing *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F.Supp.2d 148, 160 (S.D.N.Y. 2008)). "However, corporations are not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *Id.* (quoting *In re Optionable Sec. Litig.*, 577 F.Supp.2d 681, 692 (S.D.N.Y. 2008) (quoting *In re Time Warner*, 9 F.3d at 267)) (also citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239–40 (2d Cir. 2016); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F.Supp.2d 564, 575 (S.D.N.Y. 2013), aff'd, 566 Fed.Appx. 93 (2d Cir. 2014)). Here, the Complaint failed to allege any material misstatement or omission under these heightened pleading standards.

While the Complaint does purport to quote from some 2012 emails and make general allegations about the BG Defendants' failure to disclose their true intentions (*i.e.*, to sell their stocks some day), the emails are not attached so that they may be read in context, and there is insufficient information in the Complaint to conclude that the BG Defendants omitted any information to make its statements materially misleading in any way.

The only specific omissions alleged in the Complaint fall into two categories: (i) the Writer A Allegations, and (ii) the Writer B Allegations. The Writing A Allegations are set forth in the Complaint at ¶¶ 55-62, and the Writer B Allegations are at ¶¶ 82-91. None of the them involve material omissions on the part of the B.G. Defendants.

### 1. None of the Writer A Allegations Constitute Material Misstatement or Omissions.

According to the Complaint, the BG Defendants made material misstatements by publishing to certain of their clients an article that the Commission contends made material omissions, which was written by so-called Writer A. Complaint, ¶ 58. According to the Complaint, the email, which was allegedly authored by Mr. Genovese (and is not attached to the Complaint), was misleading for the following reasons:

> Genovese's cover email was purposefully and materially misleading because: (i) it constituted scalping; (ii) it omitted that Genovese had commissioned Writer A's recommendation in exchange for compensation and pre-approved its content; and (iii) it concealed the reality that Genovese was a controlling shareholder who had acquired a large block of shares for no or nominal cost, and that his investment was primarily the result of acquiring additional LBSV shares to consolidate his control and to obtain LBSV's TSX listing, not to fund research and development.

Complaint, ¶ 60. All of these supposed misstatements are not affirmative misstatements at all, but at most omissions. Therefore, the Commission is required to explain why the failure to disclose them makes the actual representations made by Mr. Genovese false. The Complaint fails to do so. Instead, the Complaint just states baldly that Mr. Genovese interaction with Writer A was *ipso-facto* suspicious (in fact it would be irrational to think that an industry insider like

4

Writer A would *not* have consulted with an insider like Mr. Genovese), and that it would be surprising for investors that Mr. Genovese "planned to profit" from the same investment in Liberty Silver that they did. Complaint, ¶ 61. The failure of the Commission to even attempt to offer an explanation for why the alleged omissions set forth in paragraph 60 of the Complaint make affirmative representations of Mr. Genovese misleading is fatal to the Commission's claims.

The Commission cannot plausibly argue that it successfully alleged that the BG Defendants concealed their financial interest in Liberty Silver. Nowhere in the Complaint does it say that the B.G. Defendants omitted to disclose that they owned a substantial stake in Liberty Silver (notably, that fact was disclosed repeatedly to their clients). Instead, the Complaint alleges merely that the B.G. Defendants did not disclose enough about that their intentions with respect to that ownership—in particular the B.G. Defendants' intention to sell Liberty Silver shares for a profit—and the extent of that ownership—that the degree of ownership was not precisely disclosed. But nowhere does the Complaint address how that supposed failure to disclose would be material to an investor. Indeed, missing completely from the Complaint is an explanation about why a rational investor would be dissuaded from purchasing shares of Liberty Silver merely because (i) the B.G. Defendants also own the stock, (ii) the B.G. Defendants own a significant portion of the stock, *or* (iii) the BG Defendants intended to sell their Liberty Silver shares for a profit. Therefore, the Complaint fails completely to meet the stringent pleading standards of the PSLRA and Rule 9(b).

2. **None of the Writer B Allegations Constitute Material Misstatements or Omissions.**

The second set of misrepresentations by Mr. Genovese supposedly made were in September of 2012, and they too were not affirmative misrepresentations, but omissions.

According to the Complaint, a newsletter writer referred to as Writer B collaborated with Mr. Genovese in writing a positive article about Liberty Silver:

> Writer B's newsletter recommendation touted that LBSV had "traded over 20 million shares and doubled in value" in September, and that "[a] major Wall Street firm is actively accumulating a position," and it quoted Genovese as saying "'BG[C] is betting big on silver, and Liberty Silver Corp is our biggest bet."

Complaint, ¶ 84. According to the Complaint, later that day, Mr. Genovese, sent out an email, quoting from the newsletter and the Complaint claims that email was materially misleading for the following reasons:

> (1) constituted scalping; (2) concealed Genovese's compensation for and control of Writer B's recommendation; (3) did not disclose that the increase in share price and trading was due to Genovese's scheme; and (4) falsely implied that the "major Wall Street firm" had taken a proprietary position, when in reality JTF had invested none of its own capital in LBSV.

Complaint, ¶ 87. But missing from the Complaint is any explanation for how or why any affirmative statements of the BG Defendants are rendered false or misleading by the supposed omissions. And that is for a very good reason—there are no such affirmative statements that are rendered misleading in light of the supposed omissions.

### 3. The Complaint Itself Admits That The Supposed Omissions Were Not Misleading.

According to the Complaint, Mr. Genovese circulated an email to his client investors in Liberty Silver with an explicit disclaimer:

> It stated, in relevant part, that "BG[C] has a long position in this security via its subsidiary, Look Back Investments[,] and *may trade in and out of this security at their own discretion without informing any person or entity.*"

Complaint, ¶ 88 (emphasis supplied). In this one paragraph, the Commission admits that the BG Defendants put its clients fully on notice (as the BG Defendants did repeatedly elsewhere), that the BG Defendants, through one or more affiliates, had a significant equity interest in Liberty Silver that that may be subject to discretionary trading. So the Complaint itself admits that the

6

alleged omissions were not material at all—because they when read in the context of the other materials provided by the BG Defendants to its clients, those clients were actually fully aware of the BG Defendants' interest in Liberty Silver.

### B. The Complaint Contains No Other Precise Misstatement or Omissions that Meet the Standards of the PSLRA or 9(b) of the Federal Rules of Civil Procedure.

The allegations regarding Writer A and Writer B are the only allegations in the Complaint that purport to describe material misrepresentations with any specificity at all. The others are either vague, conclusory, or involve activity that is completely disconnected from investors. Therefore, they to meet the heightened pleading standards of the PSLRA and Federal Rules of Civil Procedure 9(b).

Dated: New York, New York
       February 2, 2018

                                Respectfully Submitted,

                                LYNCH ROWIN LLP

                                By:____/s/ Marc Rowin____
                                      Marc Rowin (MR6758)
                                30 Vesey Street, 8th Floor
                                New York, New York 10007
                                (212) 682-4001
                                mrowin@lynchrowin.com
                                Attorneys for Defendants Robert Donald
                                Bruce Genovese and B.G. Capital Group Ltd.