

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NANCY A. BROWN
TELEPHONE: (212) 336-1023
EMAIL: BrownN@sec.gov

July 11, 2018

**VIA Email and ECF**
Hon. Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   SEC v. Genovese, et al.; No. 17 Civ. 5821 (RJS)

Dear Judge Sullivan:

We represent the Plaintiff, Securities and Exchange Commission (the "Commission"), in this action. By Order dated June 29, 2018, the Court directed the parties to submit a joint letter by July 11, 2018 (DE 31). This letter includes the input of Defendants Robert Genovese and B.G. Capital Group Ltd. ("BGC," and, with Defendant Genovese, "Genovese Defendants") and Abraham Mirman ("Mirman").

1.   Brief statement of the nature of the action and the principal defenses:

Nature of the action:

The Commission's Complaint alleges that between August and October 2012, the Genovese Defendants engaged in a penny stock promotion, manipulation and unlawful distribution scheme relating to shares of Liberty Silver Corporation ("LBSV" or "Liberty Silver"). The Genovese Defendants, who as of July 31, 2012 beneficially owned more than 44% of LBSV's outstanding shares, schemed to inflate the price of LBSV shares and then dump their shares on unsuspecting investors, including the customers of Mirman's firm, John Thomas Financial ("JTF"). The Genovese Defendants accomplished this, in part, by enlisting JTF brokers to market the stock to their clients. JTF's CEO and Mirman agreed to promote LBSV to JTF's brokers and assist the Genovese Defendants' pumping efforts in other ways in exchange for a Genovese Defendants' "loan" of $2 million for the benefit of JTF derived from the proceeds of the shares sold. For his part, Mirman expected to earn a 20% cut of that loan. Genovese made multiple materially misleading presentations, facilitated and encouraged by Mirman, to the JTF brokers to convince them to recommend the stock to their customers. Mirman further aided and abetted the Genovese Defendants' fraudulent scheme by, among other things, opening and maintaining Genovese's brokerage accounts and executing a false representation letter without conducting a reasonable inquiry into the Genovese Defendants' stock sales.

Genovese also promoted LBSV, including by commissioning and distributing newsletter articles recommending Liberty Silver, while failing to disclose that he had paid for the articles, that he was dumping millions of shares of Liberty Silver stock, and the financial arrangements between him and JTF. Further, he used the accounts set up by Mirman at JTF to engage in manipulative trading on October 3, 2012, increasing Liberty Silver's share price and creating the false appearance of liquidity and demand for Liberty Silver stock.

Ultimately, between August 21, 2012 and October 5, 2012, when the Commission suspended trading in Liberty Silver, JTF customers bought over 19 million LBSV shares, and the stock price more than doubled, from $0.70 to $1.55. Genovese, through his entities, dumped nearly 13 million shares of LBSV common stock in the U.S., in the absence of registration, for proceeds of over $17.5 million. Mirman actively participated in the unregistered distribution of the Genovese Defendants' LBSV securities through JTF, and earned profits of over $300,000 from commissions on Genovese's LBSV stock trades.

As a result of this conduct, the Genovese Defendants violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") , and Sections 9(a) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder ,and Mirman violated Sections 5(a), 5(c) and 17(a)(1) and 17(a)(3) of the Securities Act , and aided and abetted the Genovese Defendants' violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act  and Section 10(b) of the Exchange Act  and Rules 10b-5(a) and (c) thereunder. The Commission seeks as to all Defendants: (i) permanent injunctive relief, (ii) disgorgement of ill-gotten gains plus prejudgment interest thereon; (iii) civil monetary penalties; and (iv) penny stock bars.

Principal defenses:

<u>Genovese Defendants</u>:

The Genovese Defendants deny any and all allegations that the Commission has leveled against them concerning violations of the federal securities laws and intend to vigorously defend themselves against the allegations that they were involved in the promotion, manipulation and unlawful distribution of Liberty Silver stock.

The Genovese Defendants dispute to following core allegations in the Commission's Complaint including:  (1) their ownership and control over Liberty Silver and its stock; (2) whether its loan to JTF was improper; (3) falsely promoting and manipulating Liberty Silver's stock; (4) hiring "newsletter" authors to write misleading articles; (5) selling unregistered securities; and (6) whether Liberty Silver's shareholders were misled.

The Genovese Defendants did not engage in a scheme to do anything detrimental to Liberty Silver's shareholders.  The Genovese Defendants assert that the Commission has failed to state a claim upon which relief could be granted and it will not be able to prove

Hon. Richard J. Sullivan                                              July 11, 2018
Page 3

"scienter". Furthermore, the Genovese Defendants will contest the relief sought by the Commission in the form of injunctive relief, disgorgement and civil money penalties.

Mirman:

Mirman was not hired to, and never did control, manage, supervise or work in the retail brokerage arm of JTF. The SEC cannot prove otherwise. He was hired, and worked for only a short time, as the head of investment banking at JTF. In that capacity his connection to the alleged Genovese/Belisis retail brokerage scheme is more than tentative. It is non-existent. The facts alleged by the SEC to survive Mirman's motion to dismiss are insufficient to sustain the claims against him. Mirman's execution of convenience of a broker's letter based on false information he was given, his receipt of what amounted to an introduction fee for introducing Genovese to Belisis, and his passive attendance at one or two broker meetings in which he did nothing more than introduce Genovese will not support a finding of intentional, reckless or even negligent conduct.

Mirman denies that he is liable under any of the causes of action alleged by the SEC. Mirman denies that he is liable under Sections 5(a) and 5(c) of the Securities Act because he was not involved in any trading activity at JTF, never directly or indirectly sold or offered to sell securities, and at no time during his employment with JTF engaged in any act that would make him "necessary participant," or "substantial factor" or the "but for" reason in the sale of Liberty Silver shares. Moreover, Mirman had no knowledge that Genovese was an affiliate of Liberty Silver or that Genovese's shares in Liberty Silver were unregistered. Despite receiving the title of "representative of record" for one of Genovese's accounts, Mirman did not act as a broker for the account, did not solicit any customers, never communicated with a buyer of Liberty Silver securities, never drafted any sales materials or other communications to buyers of Liberty Silver securities, did not draft or participate in the drafting of any publicity concerning Liberty Silver, and did not directly cause or participate in any sales of Liberty Silver securities. Mirman additionally denies that any inference of wrongful conduct can be drawn from the 20% commission that Mirman stood to receive for securing a loan from Genovese to JTF, which commission was not for any act related to the sale of Liberty Silver shares, and which Mirman was never paid. Mirman further submits that any conduct on his part with respect to the Liberty Silver shares was at most *de minimis* and insufficient to establish liability under sections 5(a) and 5(c).

Mirman also denies that he is liable under Sections 17(a)(1) and 17(a)(3) because the SEC cannot establish that Mirman had the requisite scienter. Mirman had neither the motive nor the opportunity to commit fraud in connection with the sale of Liberty Silver shares, because, among other things, he did not direct Genovese's accounts at JTF, did not act as a broker for the accounts, did not control the communications to investors, was not aware of any falsity in communications to investors, and did not solicit or sell Liberty Silver shares to any JTF customers. Although Mirman was listed as an account representative for Genovese's accounts, the SEC will be unable to show that Mirman received any concrete or personal benefit in that role from Genovese's alleged fraudulent

scheme. Mirman also cannot be held liable under Sections 17(a)(1) and 17(a)(3) because the SEC will be unable to show that Mirman either knew or was reckless in not knowing about Genovese's allegedly fraudulent scheme. At most, Mirman was the recipient of much of the same misrepresentations as the other targets of Genovese's alleged scheme.

The SEC also cannot show that Mirman aided and abetted the Genovese Defendants' violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, or Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, because it cannot show that Mirman knew about Genovese's fraudulent scheme, or that he substantially assisted in that scheme. Mirman also denies that he facilitated or encouraged any presentations by Genovese.

2. Brief explanation of jurisdiction and venue:

The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 22(a) and 22(c) of the Securities Act and Sections 21(d) and 27 of the Exchange Act.

Venue lies in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act. Some of the acts, practices, courses of business and transactions constituting the violations alleged herein occurred within the Southern District of New York. For example, the Genovese Defendants sold Liberty Silver securities in unregistered sales and executed manipulative trades in those securities, in part, through JTF, which was located in the Southern District of New York. Mirman was associated with JTF and some of his fraudulent conduct took place at, or through, JTF.

Genovese Defendants:

The Genovese Defendants do not anticipate contesting either subject matter jurisdiction or venue.

Mirman:

Defendant Mirman does not anticipate challenging jurisdiction at this time.

3. Outstanding motions: There are currently no pending motions.

4. Discovery: No discovery in has taken place or is needed for settlement discussions.

Defendant Mirman's position is that no discovery has taken place in this action. However, the SEC is in possession of extensive administrative discovery that preceded the filing of this action and that has not yet been provided to Mirman. Prompt production of that information may lead to further settlement discussions and was requested pre-filing.

5. Prior settlement discussions: There have been no settlement discussions in this action.

Hon. Richard J. Sullivan											July 11, 2018
Page 5

6.    Estimated length of trial: Approximately four weeks.

7.    Further information:

Attached is the parties' proposed case management plan and scheduling order.

Respectfully submitted,

Nancy A. Brown

Attachment

cc:    All Defendants via e-mail