UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
SECURITIES AND EXCHANGE                                     :
COMMISSION,                                                 :
                                                            :
                           Plaintiff,                       :
                                                            :
              v.                                            :   1:17-cv-5821-LGS
                                                            :   **Oral Argument Requested**
ROBERT DONALD BRUCE GENOVESE,                               :
B.G. CAPITAL GROUP, LTD., and                               :
ABRAHAM "AVI" MIRMAN,                                       :
                                                            :
                           Defendants.                      :
------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION FOR RECONSIDERATION</u>



Motion DENIED for the reasons stated in the Order at Dkt. No. 218.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 221.

Dated: March 22, 2022
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 2

I.    Mirman's Motion for Reconsideration Is Procedurally Proper. ........................... 3

    A.    The Delay in Filing This Motion Is Excusable. ........................................ 3

    B.    This Motion Does Not Raise "New Theories" Not Previously
        Raised. ................................................................................................... 4

II.    The Court's Summary Judgment Order Was Premised on a Clear Error of
     Law. ....................................................................................................... 5

    A.    Rule 144 Expressly Permits Reliance on an Issuer's Statement
        That It Is "Subject to the Reporting Requirements of Section 13 or
        15(d)." ................................................................................................... 5

    B.    The SEC's Arguments in Response Are Misleading and Meritless. ......... 7

    C.    The Court's Order Imposes an Impractical Burden on
        Shareholders. ....................................................................................... 8

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Alvarez v. Berryhill*,
2018 WL 1035213 (S.D. Cal. Feb. 23, 2018) ...........................................................................3

*Borden v. United States*,
141 S. Ct. 1817 (2021) ............................................................................................................8

*Guangdong Foodstuffs Import & Export (Group) Corp. v. Yang Shing Trading Co.*,
2007 WL 2769498 (E.D.N.Y. Sept. 21, 2007) .........................................................................3

*Hankins v. Lyght*,
441 F.3d 96 (2d Cir. 2006) ....................................................................................................4, 5

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ............................................................................................................8

*Point Prods. A.G. v. Sony Music Entm't*,
2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) .......................................................................2

*Raymond v. Int'l Bus. Machines Corp.*,
148 F.3d 63 (2d Cir. 1998) ......................................................................................................2

*Richman v. W.L. Gore & Assocs., Inc.*,
988 F. Supp. 753 (S.D.N.Y. 1997) ..........................................................................................2

*Shervington v. Vill. of Piermont*,
732 F. Supp. 2d 423 (S.D.N.Y. 2010) .....................................................................................2

*VFS Fin., Inc. v. Elias-Savion-Fox LLC*,
73 F. Supp. 3d 329 (S.D.N.Y. 2014).......................................................................................5

*Williams v. Comm'r of Social Security*,
2021 WL 4480536 (E.D.N.Y. Sept. 30, 2021) ........................................................................3

**STATUTES**

15 U.S.C. § 78o(d) ..............................................................................................................9, 10

44 U.S.C. § 1510(a) ...................................................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

REGULATIONS

17 C.F.R. § 229.201(b) .............................................................................................10

17 C.F.R. § 229.401(f) ...............................................................................................2

17 C.F.R. § 229.402 ...................................................................................................6

17 C.F.R. § 230.144 ............................................................................................2, 6, 7

17 C.F.R. § 230.506(c) ...............................................................................................6

17 C.F.R. § 240.12g5-1 ..............................................................................................9

17 C.F.R. § 240.12h-3 ................................................................................................9

17 C.F.R. § 240.15d-6 ................................................................................................9

RULES

Fed. R. Civ. P. 6(b)(1)(B) .......................................................................................2, 3

Fed. R. Civ. P. 54(b) ...................................................................................................2

OTHER AUTHORITIES

*Revisions to Rule 144 & Rule 145 to Shorten Holding Period for Affiliates
    and Non-Affiliates*, Proposed Rule, 72 Fed. Reg. 36,822 (July 5, 2007).................7

*Revisions to Rules 144 & 145*, Final Rule, 72 Fed. Reg. 71,546 (Dec. 17, 2007).........7

SEC Division of Corporation Finance, *Manual of Publicly Available Telephone
    Interpretations: Rule 144* (July 1, 1997), https://tinyurl.com/y3zjsybm ..................8

Wright & Miller, 18B Federal Practice & Procedure § 4478.1 (3d ed.).........................4

**INTRODUCTION**

Defendant Abraham "Avi" Mirman ("Mirman") moves for partial reconsideration of this Court's Order dated March 26, 2021, granting the SEC summary judgment on its claim under Section 5 of the Securities Act with respect to the Look-Back Sale (the "Order"). *See* ECF 169. On March 14, 2022, the Court denied Mirman's application for additional pages for this brief. ECF 218. Mirman acknowledges the concerns expressed by the Court in its ruling, but respectfully disagrees and believes that more complete briefing will resolve those concerns. Accordingly, in order to ensure a clear record on this motion, and given the important policy issues raised by the summary judgment ruling, Mirman hereby respectfully files his motion for reconsideration.

The Court's primary concern was timeliness, but under the unique circumstances here, delay in seeking reconsideration should not be held against Mirman. In particular, prior counsel had serious, life-threatening medical issues, and at the same time, there was a significant breakdown in prior counsel's relationship with Mirman. ECF 201 at 6. The confluence of those impediments delayed the filing of this motion until Mirman could engage new counsel, and it would be inequitable to hold Mirman liable under Section 5 based solely on a clear misapplication of law. Nor would reconsideration delay trial, which is now scheduled for October. ECF 214.

The Court also stated that Mirman's motion seeks to "raise new theories." ECF 218. Respectfully, that is incorrect. Mirman's summary judgment brief argued extensively that summary judgment was improper because Liberty Silver Corporation ("Liberty Silver") had represented in its SEC filings (Form 10-K) that it was "subject to" the Exchange Act's reporting requirements. ECF 156 at 23–27. Mirman relied on the plain text of Rule 144 and repeatedly referenced the "current information" requirement for reporting issuers. *Id.* at 23–24. Thus, even without specifically quoting the text of Rule 144(c), Mirman preserved the argument advanced in this motion. And that argument clearly has merit. The Note to Rule 144(c) specifically provides

that a person "can rely upon" an issuer's statement that it "has been subject to such filing requirements for the past 90 days."  17 C.F.R. § 230.144(c)(1) Note.

The SEC has informed Mirman's counsel that it will not proceed to trial on its Section 5 claim with respect to the BGC Sale.  Thus, the Court's Order is the only potential basis for Mirman to be held liable under Section 5, which can have drastic consequences to Mirman and the oil and gas exploration company he now runs.  *Cf.* 17 C.F.R. § 229.401(f) (requiring disclosure of any event during the last 10 years in which an executive officer of a public company was found to have violated federal securities law).

## ARGUMENT

This Court "has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision ***at any time*** before the entry of final judgment."  *Richman v. W.L. Gore & Assocs., Inc.*, 988 F. Supp. 753, 755 (S.D.N.Y. 1997) (emphasis added).  "[T]he major grounds justifying reconsideration" include "the need to correct a clear error or prevent manifest injustice."  *Shervington v. Vill. of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010).  Reconsideration is also warranted where the Court's earlier decision "overlooked" a controlling legal or factual issue that was "put before" the Court.  *Point Prods. A.G. v. Sony Music Entm't*, 2002 WL 31856951, at *2 (S.D.N.Y. Dec. 19, 2002).  The Court has inherent discretion to excuse the filing deadlines in Local Rule 6.3, and should "'exercise this discretion when justice so requires.'"  *Shervington*, 732 F. Supp. 2d at 425; *see also Richman*, 988 F. Supp. at 755 (granting motion for reconsideration filed 19 months after decision).  Federal Rule of Civil Procedure 6(b)(1)(B) also permits late filings "for good cause" where a party missed a deadline "because of excusable neglect."  "[M]ere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect.'"  *Raymond v. Int'l Bus. Machines Corp.*, 148 F.3d 63, 66 (2d Cir. 1998).  For the reasons described below, the Court should exercise its discretion here and

reconsider its Order.

**I.      Mirman's Motion for Reconsideration Is Procedurally Proper.**

    **A.      The Delay in Filing This Motion Is Excusable.**

The Court should exercise its discretion to excuse Mirman's delay in seeking reconsideration, either under its inherent authority or Rule 6(b), because that delay largely stems from prior counsel's personal medical issues and a breakdown in prior counsel's communications with Mirman.  Among other problems, "all" of the associates working on Mirman's case "left the firm," and the partner encountered life-threatening, unforeseen medical issues."  ECF 201 at 6; *see also* ECF 176, 183, 196.  It is these unforeseen circumstances—not any machinations by Mirman himself—that resulted in delays to the trial schedule.

"Ill health is a common reason for excusable neglect" allowing an untimely filing, even where counsel's failure to meet a deadline was "negligent."  *Alvarez v. Berryhill*, 2018 WL 1035213, at *2 (S.D. Cal. Feb. 23, 2018); *see also Williams v. Comm'r of Social Security*, 2021 WL 4480536, at *3 (E.D.N.Y. Sept. 30, 2021) (allowing untimely filing despite attorney's explanations that "var[ied] in legitimacy").  In addition, there were "fundamental disagreements" and "a breakdown of the attorney-client relationship" that required prior counsel to move to withdraw.  ECF 201 at 4–5.  Mirman—proceeding *pro se* for all practical purposes—faced time-consuming obstacles in seeking new evidence concerning the number of shareholders of record of Liberty Silver in response to the Court's Order.  *See* Declaration of A. Mirman ¶¶ 3, 8.[1]  Mirman's new counsel timely notified the Court of this motion for reconsideration before even filing an appearance.  *Cf., e.g.*, *Guangdong Foodstuffs Import & Export (Group) Corp. v. Yang Shing*

---

[1]  Mirman respectfully submits his attached declaration in support of his request for relief under Federal Rule of Civil Procedure 6(b)(1)(B), which requires a party to show "good cause" and "excusable neglect" to seek permission to file an untimely motion.

*Trading Co.*, 2007 WL 2769498, at *2 (E.D.N.Y. Sept. 21, 2007) (excusing two-year delay in filing jury demand where there was no "bad faith" or prejudice to opposing parties).

Although the Court is naturally concerned with undue delay, reconsideration of the Court's Order would not unfairly prejudice the SEC or contribute to "serious delays in this case overall." ECF 218.  Trial is now scheduled for October 2022, ECF 214, and there is more than enough time for the Court to reconsider its Order while leaving the parties sufficient time to prepare for trial, which will involve factual issues that overlap with the SEC's Section 5 claim.  Defense counsel will not seek an adjournment of the trial date based on this motion, and in fact, is willing to proceed with trial at an earlier date this summer should the Court prefer.  And for both parties (and the Court), it will be far more efficient to take the SEC's Section 5 claim to trial along with the SEC's other claims, rather than litigate that claim on remand following appeal.  *See* Wright & Miller, 18B Federal Practice & Procedure § 4478.1 (3d ed.) ("Self-correction is manifestly important if the alternative is the greater delay and expense that would result from . . . appellate reversal.").

### B.    This Motion Does Not Raise "New Theories" Not Previously Raised.

In denying his request for additional pages, the Court reasoned that "Mirman seeks to raise new theories that were not raised previously."  ECF 218.  Respectfully, that is incorrect.

The Court's Order turned on the text of Rule 144—specifically, the Court held that Rule 144 requires Mirman to show that Liberty Silver "was required to report" under Section 13 or 15(d), and that Liberty Silver's representation that it *was* subject to those filing requirements "does not bear on the question."  Order at 19–20.  Where, as here, a decision turns on the proper interpretation of a statute or regulation, courts are required to apply the plain text "as . . . written." *Hankins v. Lyght*, 441 F.3d 96, 104 (2d Cir. 2006).  So long as a party "vigorously pursued and preserved the substance of the issue," he cannot forfeit the correct interpretation of the law.  *Id.* That is true even where, unlike here, a plaintiff expressly *disavows* reliance on an *entire statute*.

*Id.* (no forfeiture of reliance on the Religious Freedom Restoration Act); *see also, e.g.*, *VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329, 334–35 (S.D.N.Y. 2014) (no forfeiture of legal argument where the party included case citations for the first time in its reply brief).

Here, "the substance of the issue" is whether Liberty Silver's representations on the cover page of its Form 10-K precluded summary judgment. *Hankins*, 441 F.3d at 104. Mirman relied on these representations as proof that Liberty Silver was a "reporting issuer" for purposes of Rule 144's six-month holding period. ECF 156 at 23–27. Mirman explained the purpose of the shorter holding period for reporting issuers was "to ensure that information is publicly available," that Liberty Silver's Form 10-K specifically stated that it had "'filed all reports required to be filed by Section 13 or 15(d) . . . and has been subject to such filing requirements for the past 90 days,'" and that "[t]his language exactly parallels the required language under Rule 144." *Id.* Liberty Silver's statements "*represented to the SEC and to the public* that it was subject to the reporting requirements of the Exchange Act." *Id.* at 25 (emphasis added). Thus, Mirman contended that there was at least a genuine dispute of material fact concerning whether Liberty Silver was "a reporting issuer" for purposes of Rule 144, *id.* at 23, 25–27, and the SEC attempted to rebut this precise issue on reply, ECF 161 at 11–12.

## II.   The Court's Summary Judgment Order Was Premised on a Clear Error of Law.

### A.   Rule 144 Expressly Permits Reliance on an Issuer's Statement That It Is "Subject to the Reporting Requirements of Section 13 or 15(d)."

It is undisputed that Liberty Silver's Form 10-K stated that it "has been subject" to filing requirements under Section 13 or 15(d) of the Exchange Act when Liberty Silver: (i) checked "No" in response to whether "the registrant is not required to file reports pursuant to Section 13 or Section 15(d)"; and (ii) checked "Yes" in response to "whether the [r]egistrant (1) has filed all reports required to be filed by Section 13 or 15(d) . . . during the past 12 months . . . and (2) has

5

been subject to such filing requirements for the past 90 days."  ECF 151-43 at 1.

The plain text and structure of Rule 144 make clear that a person may rely on precisely these representations in determining whether the sale qualifies for the Rule 144 safe harbor.  In particular, the Note to Rule 144(c) expressly provides that:

> With respect to paragraph (c)(1), the person can rely upon:
>
> 1. A statement in whichever is the most recent report, quarterly or annual, required to be filed and filed by the issuer that such issuer has:
>
>> a. Filed all reports required under section 13 or 15(d) of the Exchange Act, as applicable, during the preceding 12 months . . . *and has been subject to such filing requirements for the past 90 days*; [or]
>>
>> . . . .
>
> 2. A written statement from the issuer that it has complied with such reporting or submission requirements.

17 C.F.R. § 230.144(c)(1) Note (emphasis added).[2]  The Note has the binding force and effect of law, since it is published in the Code of Federal Regulations.  *See* 44 U.S.C. § 1510(a) (authorizing publication only for documents that have "legal effect").  The SEC often includes similar notes in the text of its rules.  *See, e.g.*, 17 C.F.R. §§ 229.402, 230.506(c).

A straightforward, plain-English review of the Note demonstrates that this Court's interpretation of Rule 144 was premised on clear error: a seller or broker is expressly permitted to rely upon the issuer's statements that it has "[f]iled all reports required under section 13 or 15(d) of the Exchange Act" and "*has been subject to such filing requirements* for the past 90 days."  17 C.F.R. § 230.144(c) Note 1.a (emphasis added).  The plain text of the Rule is consistent with the SEC's purpose in adopting the six-month holding period for reporting issuers.  In that

---

[2]  The only qualifier to reliance is where a person "knows or has reason to believe that the issuer has not complied with [its reporting] requirements."  17 C.F.R. § 230.144(c)(1) Note.  This exception, however, does not apply to reliance on an issuer's statement that it is *subject to* filing requirements.

rulemaking—which also added the Note to Rule 144(c)—the SEC explained that the changes would bring "[g]reater clarity and transparency [to] our rules" and thereby "reduce security holders' transactional costs by eliminating uncertainty and reducing the need for legal analysis." 72 Fed. Reg. 71,546, 71,563 (Dec. 17, 2007).  The Court's unprecedented interpretation, however, increases uncertainty and requires sellers to engage in a complex legal analysis under Section 15(d) based on information uniquely in the issuer's—not a seller's or broker's—possession.

### B.      The SEC's Arguments in Response Are Misleading and Meritless.

The SEC's arguments in response lack merit.  *First*, the SEC contends that "the 'Note' to Rule 144(c)(1)" does not address "whether an issuer is a 'reporting company'" or "what information a seller may rely on to determine that status."  ECF 217 at 2.  That ignores the Note's plain text.  Rule 144(c)(1) expressly requires an issuer to be a "[r]eporting issuer"; defines that to mean an issuer that is "subject to the reporting requirements of section 13 or 15(d)," 17 C.F.R. § 230.144(c)(1); and then the Note provides that a seller "can rely upon" an issuer's statement that it is "subject to such filing requirements," *id.* § 230.144(c) Note 1.a.

*Second*, the SEC contends that "Rule 144(c)(1) and its 'Note' . . . do not concern the Rule 144 'holding period.'"  ECF 217 at 2.  But Paragraph (d)(1)(i), which establishes the holding periods, repeats the phrase "subject to the reporting requirements of section 13 or 15(d) of the Exchange Act," which, as shown above, also appears in Rule 144(c)(1).   17 C.F.R. § 230.144(c)(1), (d)(1)(i).  This repeated language must be read together and does not create separate requirements—something the SEC made clear when it proposed the shorter holding period for reporting issuers.  *See* 72 Fed. Reg. 36,822, 36,827 n.78 (July 5, 2007) ("As set forth *in paragraphs (c) and (d)* of the proposed rules, a reporting company is an issuer that is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements.") (emphasis added).  A sale that satisfies paragraph (c)(1)'s requirement that a reporting issuer be "subject to

the reporting requirements of section 13 or 15(d) of the Exchange Act" necessarily satisfies the exact same requirement, incorporated *verbatim*, in paragraph (d).

Any ruling to the contrary is nonsensical and would violate basic canons of interpretation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019) (courts "must apply all traditional methods of interpretation to any rule"). The SEC's approach would permit a seller or broker to rely on an issuer's statements when determining whether the issuer is a reporting company with respect to Rule 144(c)'s "current public information" requirement, but then require the seller to look beyond those representations to determine whether the issuer is a "reporting company" with respect to Rule 144(d)'s holding period. That would render portions of Rule 144(c)—which specifically provides that a seller "can rely upon" an issuer's representation that it is "subject to such filing requirements"—mere "surplusage." *Borden v. United States*, 141 S. Ct. 1817, 1827 (2021).

*Third*, the SEC argues that published staff "guidance" on its website (Question 132.09) demonstrates that "voluntary filers" are not subject to Section 13 or 15(d). ECF 217 at 2. That is a red herring because Liberty Silver did not hold itself out as a voluntary filer. The issue is not whether the issuer is a mandatory or voluntary filer—it is whether the public can rely on an issuer's *statement* that it is a mandatory filer to obtain the benefit of the Rule 144 safe harbor. And the answer to that issue is clearly laid out in the Note to Rule 144(c)(1). The SEC's assertion also ignores its own website guidance that, for purposes of Rule 144, "[a] seller can rely on current representations in the periodic reports filed by the issuer, or a written representation by the issuer." SEC Division of Corporation Finance, *Manual of Publicly Available Telephone Interpretations: Rule 144* at 4 (July 1, 1997), https://tinyurl.com/y3zjsybm.

### C.    The Court's Order Imposes an Impractical Burden on Shareholders.

Other SEC rules are similarly clear that it is the issuer's burden to determine whether its filing requirements have been suspended under Section 15(d), and to notify the public when that

happens by filing a Form 15.  *See* 17 C.F.R. §§ 240.12h-3, 240.15d-6.  The Form 15 requirement

fits hand-in-glove with the language in Rule 144(c) permitting shareholders to "rely upon" an

issuer's representation that it is "subject to such filing requirements."

Nor is it practical to require shareholders to independently determine whether an issuer's

reporting requirements have been suspended.  Exchange Act Section 15(d) provides that an

issuer's reporting obligation is suspended if, at the beginning of the fiscal year, its securities are

"held of record by less than 300 persons."  15 U.S.C. § 78o(d)(1).  But that calculation is neither

simple nor can it be determined based on publicly available information.  For example, Exchange

Act Rule 12g5-1 identifies instances where the SEC or issuer must base the "securities of record"

calculation on number of "beneficial owners of such securities."  17 C.F.R. § 240.12g5-1(b)(3);

*see also id.* § 240.12g5-1(b)(1) (similar rule for "a voting trust, deposit agreement or similar

arrangement").   Thus, sometimes "beneficial owners" count towards the "300 persons"

calculation, and sometimes only the brokers of record count.  Here, Mirman had to go to

considerable lengths to even obtain a shareholder list for Liberty Silver (which is not public

information), which showed that the firm had more than 1,400 beneficial owners.  Many of those

owners could have been included as "record owners" under Rule 12g5-1(b) at the time of the Look-

Back Sale, but only Liberty Silver would have had that information.

Indeed, the determination of how many shareholders of record exist at the beginning of the

issuer's fiscal year is so complex that even the Court relied on an incorrect analysis.  At the SEC's

urging, the Court relied on Liberty Silver's Form 10-K for the fiscal year ending June 30, 2012 as

the central piece of evidence that Liberty Silver's reporting obligations had been suspended.  Order

at 20; ECF 161 at 9.  But the Form 10-K identified the number of "registered stockholders of

record" as of "September 25, 2012," ECF No. 151-43 at 18, and not as of July 1, which is the first

day of Liberty Silver's fiscal year.  Section 15(d)'s automatic suspension occurs only "at the beginning of such fiscal year [*i.e.*, July 1, 2012]."  15 U.S.C. § 78o(d).  Neither Form 10-K nor Form 10-Q requires issuers to report the number of holders of record as of the first day of the fiscal year, so it would be nearly impossible for investors and their brokers to analyze this issue.

Moreover, the Form 10-K (specifically, Regulation S-K Item 201(b)) requires disclosure of the "approximate number of holders of each class of common equity of the registrant as of the latest practicable date."  17 C.F.R. § 229.201(b)(1).  That is materially different than the automatic suspension under Section 15(d).  *First*, Item 201(b) provides for a different computation of "holders" than the computation described above under Section 15(d) and Rule 12g5-1.  For example, nothing in Item 201(b) requires issuers to count beneficial owners where the issuer has reason to believe their form of ownership is intended to circumvent Section 15(d)'s reporting requirements.  Instead, Item 201(b) includes its own definition that allows issuers to include either "the number of record holders *or* . . . individual participants in security position listings."  *Id.* § 229.201(b) (Instruction 3) (emphasis added).  The issuer must disclose which method of computation it has chosen.  *Id.*  *Second*, Item 201(b) requires an issuer to disclose shareholder numbers "as of the latest practicable date," *id.* § 229.201(b)(1), but Section 15(d)'s automatic suspension occurs only "at the beginning of such fiscal year," 15 U.S.C. § 78o(d).  Thus, Item 201(b) is not, and was not intended to be, a proxy for whether an issuer's reporting obligation has been automatically suspended as of the beginning of its fiscal year.  To the contrary, that information is separately reported by an issuer on the cover page of its Form 10-K, where the SEC requires an issuer to respond to a specific directive: "Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the [Act]."  ECF 151-43 at 1.

## CONCLUSION

The Court should reconsider and vacate its March 26, 2021 Order.

Dated:   New York, New York
        March 21, 2022

GIBSON, DUNN & CRUTCHER LLP


By: /s/  Avi Weitzman
     Avi Weitzman
     David Salant
     Elizabeth Brilliant
     Gibson, Dunn & Crutcher LLP
     200 Park Avenue
     New York, NY  10166-0193
     Telephone: 212.351.4000
     Fax: 212.351.4035
     aweitzman@gibsondunn.com
     dsalant@gibsondunn.com
     lbrilliant@gibsondunn.com

     *Attorneys for Defendant Avi Mirman*