UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SECURITIES AND EXCHANGE                                      :
COMMISSION,                                                  :
                                      Plaintiff,             :        17 Civ. 5821 (LGS)
                                                             :
            -against-                                        :        ORDER
                                                             :
ROBERT GENOVESE, ET AL.,                                     :
                                      Defendants.            :
                                                             :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

WHEREAS, on May 6, 2022, Defendant Abraham "Avi" Mirman filed four motions in limine.  On May 13, 2022, Defendant filed a motion to exclude certain testimony by Plaintiff's expert witness.  On August 29, 2022, Defendant filed three additional motions in limine.  The motions are resolved as follows.  All references to Rules are to the Federal Rules of Evidence.

1.    **Defendant's First MIL** (Dkt. No. 226).  Defendant's motion to exclude evidence or argument concerning shareholder losses is GRANTED in part and DENIED in part under Rules 402 and 403.

Plaintiff is precluded from presenting evidence or argument about investor losses *per se*, whether individually or in the aggregate, and about the size and timing of individual investors' investments.  Plaintiff is not required to prove harm to any investor, so such evidence is not probative of any disputed issue.  *See SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012); *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 598 (2d Cir. 2019).  Any minimal probative value that evidence might hold for materiality or scienter is substantially outweighed by the risk of prejudice from juror sympathy for investors.

Plaintiff is permitted to introduce evidence of stock price movement and timing and volume of investments by John Thomas Financial ("JTF") clients in the aggregate and relative to other trading activity.  Such evidence is highly probative of materiality and scienter.  To the extent Plaintiff can draw a causal connection between the disclosure of the earlier material omissions and the stock drop, it shows why Defendant and Genovese would have wanted to conceal the information they allegedly omitted.  The risk of prejudice caused by juror sympathy is sufficiently mitigated by presenting the information in aggregate form.

2.    **Defendant's Second MIL** (Dkt. No. 229).  Defendant seeks to exclude evidence obtained pursuant to a search warrant executed by the U.S. Attorney's Office for the District of New Jersey ("USAO-DNJ") and produced to Plaintiff because both agencies have refused to produce the underlying search warrant and application.  Defendant's application is DENIED.

Defendant argues for preclusion on the ground that Plaintiff's failure to produce the search warrant application and order denied him an opportunity to seek suppression of the challenged evidence on Fourth Amendment grounds.  That argument fails because Defendant lacks standing to challenge a search of anyone else's email account.  "A defendant's Fourth Amendment rights are violated only when the challenged conduct invades his legitimate expectation of privacy rather than that of a third party."  *United States v. Almaleh*, No. 17 Crim. 25, 2022 WL 602069, at *13 (S.D.N.Y. Feb. 28, 2022) (quoting *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018)) (cleaned up).  "A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation 'must show that he had a reasonable expectation of privacy in the place or object searched.'"  *Id.* (quoting *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017)).  "A person has no expectation of privacy in another person's email account."  *Id.* (internal quotation marks omitted).  Defendant has known which documents were produced by

2

the USAO-DNJ for months and has neither asserted nor offered any reason to think that any of
them came from his accounts or devices.

*United States v. Wright*, 525 F. Supp. 2d 328 (W.D.N.Y. 2007), which Defendant cites, is
inapposite.  In *Wright*, the court found that the defendant had established a reasonable
expectation of privacy and thus had standing to challenge the search.  *Id.* 335.  In the only civil
case Defendant cites in which a court ordered production of similar materials, plaintiffs had
standing, and the legality of the search squarely went to the merits of the case, not a speculative
suppression motion.  *See Atwell v. City of New York*, No. 07 Civ. 2365, 2008 WL 5336690, at *2
(S.D.N.Y. Dec. 15, 2008).  Defendant suggests that some exception to the Fourth Amendment
standing rule might apply, but does not explain how on the facts of this case.  In these
circumstances, there is no basis to preclude the fruits of the search either as a discovery sanction
or a freestanding application of the exclusionary rule.

3.       **Defendant's Third MIL** (Dkt. No. 232).  Defendant seeks to preclude Plaintiff from
introducing "other bad acts" evidence under Rules 403 and 404.  Defendant's application is
DENIED in part as moot based on Plaintiff's representation that it does not intend to offer most
potential "bad act" evidence. Defendant's application is otherwise GRANTED, provided that
Defendant does not present evidence or argument that he was *consistently* or *particularly*
concerned with compliance issues.

In general, Defendant's compliance and employment history are not probative of any
issue in this case and could only support an inference of propensity that is impermissible under
Rule 404.  However, if Defendant introduces evidence or argument of his own purported
propensity for strict compliance with rules and regulations, he will open the door to evidence
tending to rebut that inference.  Defendant will not open the door to evidence of his personal

compliance history solely by presenting evidence or argument about specific compliance-related

actions he took in connection with the transactions at issue in this case.

4.      **Defendant's Fourth MIL** (Dkt. No. 235).  Defendant seeks to preclude evidence or

argument regarding Defendant's income, financial status and lifestyle.  Defendant's application

is DENIED in part as moot based on Plaintiff's representation that it does not intend to present

evidence or argument about Defendant's current assets or income, and Defendant's application is

otherwise GRANTED in part and DENIED in part under Rule 403.

        Plaintiff may introduce evidence of incentive compensation that Defendant was to

receive in connection with the specific transactions at issue in this case -- i.e., the alleged 20%

commission on a loan to ATB Holding Co. LLC ("ATB") -- which is highly probative of

scienter.  Any prejudice caused by juror bias against Defendant after hearing evidence about his

commission compensation does not substantially outweigh this probative value.  Plaintiff is

precluded from presenting other evidence or argument about Defendant's compensation, assets,

financial status or lifestyle, or about Defendant's purported attempts to protect his assets, none of

which is probative of any disputed issue in this case and all of which is substantially more

prejudicial than probative given the potential for juror bias.

5.      **Defendant's Motion to Exclude Expert Testimony of Brian Underwood** (Dkt. No.

239).  Defendant seeks to preclude certain testimony by Plaintiff's expert Brian Underwood.

Defendant's application is DENIED as moot based on Plaintiff's representations that (1) it does

not intend to offer testimony from Underwood about any purported obligation by Defendant to

conduct a "searching inquiry" of the eligibility of the securities at issue for sale, any purported

"red flags" relevant to that obligation and Defendant's purported failure to conduct such an

inquiry, and (2) the testimony Plaintiff may offer to rebut Defendant's expert (Reilly) and on the significance of the Broker Rep Letter does not concern any of the above precluded opinions.

6.      **Defendant's Fifth MIL** (Dkt. No. 267).  Defendant moves to preclude testimony from individual Liberty Silver investors and former JTF brokers concerning the materiality of alleged statements or omissions under Rules 401, 402, 403 and 701.  Defendant's application is DENIED in part as moot based on Plaintiff's representation that it does not intend to reveal the existence of investor losses, and Defendant's application is otherwise DENIED.

As an initial matter, this motion is untimely, and Defendant's justification is unpersuasive.  Contrary to Defendant's argument, he cannot ignore the motions deadline set by Court Order simply because he learned more specifics about Plaintiff's theory of the case when witness lists and exhibit lists were disclosed.

On the merits, Defendant's arguments are unpersuasive.  Investor testimony about the materiality of a given representation to an investment decision is relevant unless the investor's views are "erroneous or idiosyncratic."  *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019) (distinguishing *United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018)).  Contrary to Defendant's argument, the fact that some of the proffered investor-witnesses are accomplished in other fields does not mean that their views on potential investments are so far outside the mainstream as to be irrelevant.  Minor idiosyncrasies in the investors' views go at most to the weight of the evidence and not its admissibility.  Defendant argues that the probative value of the evidence is substantially outweighed by the risk of two forms of prejudice:  sympathy for the investors as "victims" and confusion over whether the materiality standard is objective or subjective.  The first issue is moot, since Plaintiff represents that it will not elicit testimony about the investors' losses.  The second can be addressed with jury instructions.

Second, broker testimony is admissible for similar reasons.  Defendant does not cite any cases in which a court excluded broker testimony for the reasons he argues.  Defendant argues that brokers are unlike "reasonable investors" because brokers are duty-bound to conduct more thorough due diligence.  That is irrelevant; the materiality inquiry asks whether a fact "would have been viewed . . . as having significantly altered the 'total mix' of information" if it had been available, not whether the investor likely would have discovered it on their own.  *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  If anything, the fact that brokers usually have a larger "total mix" of information makes it less likely that they would find any single piece of information material.  Defendant's argument also cannot account for the fact that courts in this Circuit permit stock analysts, who are similarly situated to brokers in relevant respects, to testify about materiality.  *See, e.g.*, *United States v. Ferguson*, 676 F.3d 260, 274 n.10 (2d Cir. 2011).

This testimony is not improper lay witness testimony under Rule 701 because "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior."  *United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013).  Even people with somewhat technical jobs can testify as fact and not expert witnesses to facts about how they did their jobs in particular instances.  *Id.* (permitting auditors to testify as fact witnesses about how undisclosed facts would have impacted audit).

That said, it is unclear why four individual investors and five different brokers are all needed to testify on this subject.  Neither party will be permitted to offer cumulative testimony.

7.    **Defendant's Sixth MIL** (Dkt. No. 270).  Defendant moves to exclude statements that he made during certain proffer sessions reflected in FBI Form 302s ("302 Statements") pursuant to Rules 403, 408 and 410.  Defendant's application is GRANTED in part and DENIED in part.

The 302 Statements made in two of three proffer sessions -- on April 3 and June 21, 2013 -- are inadmissible under Rules 408 and 410 because Plaintiff has produced only one proffer agreement executed by Defendant, which waived the protection of those Rules only as to a third session on May 3, 2013.  The Second Circuit has held, without qualification, that "[s]tatements made by defendants in proffer sessions are covered by Rule 410."  *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005); *accord United States v. Velez*, 354 F.3d 190, 194 (2d Cir. 2004). Plaintiff suggests that the proffer sessions were not part of settlement or plea discussions but does not offer an alternative reason why Defendant voluntarily gave possibly inculpatory statements to the government in a formal proffer session.

None of the record evidence Plaintiff cites is persuasive.  It is not decisive that a separate proffer agreement with the USAO-DNJ (governing the April 3, 2013, meeting and possibly also the May 3 meeting) recites that those were not plea discussions.  That statement is immediately followed by the proviso that, "In the event this letter or the interview is later construed to constitute a plea discussion," Defendant waives the protections of Rules 408 and 410.  That Defendant's company considered making a statement about a formal settlement offer from December 2013 does not preclude the possibility of earlier, informal discussions.  Defendant's statement that he thought he was "on the same team" as Plaintiff is not inconsistent with having cooperated in the expectation of avoiding or limiting his own liability.  Similarly, the SEC's declaration that the SEC did not discuss settlement with Defendant at the proffer sessions does not provide a basis for any inference about why Defendant engaged in proffer sessions.

The act of participating in such formal discussions, with the prosecutors and with counsel, when Defendant was facing potential liability, amply expresses the reasonable hope that such participation would lead to reduced punishment.  *See United States v. Levy*, 578 F.2d 896,

901 (2d Cir. 1978) ("The offer by the defendant must, in some way, express the hope that a concession to reduce the punishment will come to pass."); *United States v. Rivera*, No. 13 Crim. 149, 2015 WL 1725991, at *4 (E.D.N.Y. Apr. 15, 2015) (among the factors courts consider are "whether the prosecutor was involved in the discussion" and "whether defendant was counseled and the behavior of counsel").  Defendant participated in formal proffer sessions with prosecutors, he did not simply blurt out an unsolicited confession to law enforcement, and there is no risk that Defendant gave the "prosecutor no chance to reject a confession he did not seek." *Levy*, 578 F.2d at 901; *Rivera*, 2015 WL 1725991, at *4.

Defendant's proffer statements are also inadmissible under Rule 408.  When a putative plaintiff has threatened to assert a claim in litigation and taken the first administrative steps to that end, an offer between the potential parties to the litigation is presumed to be, in the words of Rule 408, "offering . . . valuable consideration . . . in attempting to compromise the claim." *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 84 (2d Cir. 2017) (internal quotation marks omitted). This presumption can be rebutted only if "[t]he party seeking admission of [the] offer . . . demonstrate[s] convincingly that the offer was not an attempt to compromise the claim." *Id*.

The record here indicates that litigation was threatened and initial steps taken at the time of the proffer sessions, given the SEC's investigation and the SEC's discussion of a prospective enforcement action with Defendant's counsel a few months later.  Defendant's proffers can be interpreted as an offer to become a witness for the SEC and provide evidence in a forthcoming manner in its future proceedings -- to be "on the same team," as Defendant later characterized it. The SEC has not demonstrated convincingly that the proffers were not Defendant's attempt to compromise the SEC's claim against him.  Consequently, the April 3 and June 21 proffers are inadmissible under Rule 408.

The May 3, 2013, 302 Statements are admissible because Defendant concedes he waived the protections of Rules 408 and 410 with respect to that proffer session.  Defendant's Rule 403 argument is, in effect, that the evidence is prejudicial because it is against his interest and he disputes it.  Unlike the sole out-of-circuit case Defendant cites, he offers no evidence that the 302 Statements are inaccurate, such as his own contemporaneous notes.  *See United States v. Meek*, No. 19 Crim. 378, 2022 WL 2967716, at *4 (S.D. Ind. July 27, 2022).  There is nothing inherently prejudicial or confusing about probative evidence that Defendant disputes.

8.      **Defendant's Seventh MIL** (Dkt. No. 273).  Defendant moves to preclude lay opinion testimony or argument that statements by Genovese and/or trading by JTF brokers directly or indirectly caused movements in Liberty Silver's stock price, pursuant to Rules 401, 402, 403 and 701.  Defendant's application is GRANTED in part and DENIED in part.

Plaintiff seeks to offer that evidence only on the issue of motive, and the evidence is highly probative for that purpose.  Plaintiff's theory is that Genovese, aided by Defendant, sought to increase the share price and trading volume of Liberty stock so that Genovese could sell his shares at higher price, and that he knew his efforts would be more effective if he did not disclose the material fact that he planned to unload two large blocks of shares he owned into the market.  Evidence that this alleged plan succeeded is probative of motive, particularly when combined with the evidence addressed by Defendant's first motion, that the ultimate disclosure of Genovese's interest had the expected effect of lowering the share price.

That probative value is not substantially outweighed by the risk of prejudice and therefore the evidence is admissible, with one exception.  Defendant argues a risk of unfair prejudice from Plaintiff's use of simplified charts showing stark trend lines that may mislead the jury on the issue of materiality, suggesting that price movements were caused entirely by the

alleged omission.  *See, e.g.*, *Ferguson*, 676 F.3d at 275 ("The charts suggested that [one piece of negative information among several] caused the price of AIG shares to plummet . . . .  This is without foundation.").  That argument is persuasive.  Plaintiff states that it does not intend to use "price and volume evidence" to prove materiality, so Plaintiff should not attempt to prove motive with evidence or demonstrative aids that are unduly suggestive on the issue of materiality.  The parties shall raise any disputes in this regard by submitting the exhibits in question with a joint letter explaining the parties' respective positions no later than **November 18, 2022**.  Defendant has not identified any other risk of prejudice from the evidence admitted above.

Defendant's relevance and lay opinion testimony arguments are all unpersuasive.  Each of the cases Defendant cites requiring an "event study" addressed the elements of loss causation and damages in private securities fraud actions, which are not elements of Plaintiff's case.  *See United States v. Rutkoske*, 506 F.3d 170, 178-79 (2d Cir. 2007); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 456-57 (S.D.N.Y. 2000); *In re Executive Telecard, Ltd. Sec. Litig.*, 797 F. Supp. 1021, 1025 (S.D.N.Y. 1997).  Defendant also cites several cases, including a securities fraud case involving the very same Liberty stock, addressing the conditions under which a market is efficient enough that a Plaintiff may rely on a fraud-on-the-market theory to prove reliance.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 221 (S.D.N.Y. 2002); *Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017); *Stanaford v. Genovese*, No. 13 Civ. 80923, 2016 WL 4198146 (S.D. Fla. 2016).  The SEC, unlike an investor plaintiff, is not required to prove reliance, and all parties agree that the market for Liberty stock was inefficient.

Defendant is incorrect that expert testimony is necessary to prove that the efforts of Defendant and Genovese caused the stock price to increase.  Plaintiff intends to introduce evidence that Genovese's pitches to JTF's brokers increased Liberty's trading volume by over

50%, and draw the inference that this sudden increase in trading volume contributed to the simultaneous doubling of Liberty's stock price.  Defendant's dispute about the reasonableness of this inference goes to its weight and not admissibility.  Because reliance, loss causation and damages are not at issue, there is no need for an expert with an event study to tease out with mathematical precision the effect of the pitch and the alleged omission, relative to non-fraudulent information.

************************

In sum it is:  **ORDERED** that Defendant's application to preclude

(i)     argument or evidence concerning shareholder losses is GRANTED with respect to evidence of individual investors' investments and losses and DENIED with respect to aggregate evidence about the size and timing of JTF clients' investments and stock price movements;

(ii)    evidence obtained by a search warrant executed by the USAO-DNJ is DENIED;

(iii)    evidence or argument about "other bad acts" is GRANTED with respect to Defendant's compliance and employment history, unless Defendant opens the door, and DENIED AS MOOT with respect to other bad acts that Plaintiff does not intend to offer;

(iv)    evidence or argument regarding Defendant's income or wealth is GRANTED with respect to evidence about Defendant's compensation, assets, financial status or lifestyle generally and with respect to purported evidence to protect his assets, DENIED with respect to evidence of Defendant's incentive compensation for the transactions at issue in this case and DENIED AS MOOT with respect to other evidence that Plaintiff does not intend to offer;

(v)     certain testimony by Plaintiff's expert Brian Underwood is DENIED AS MOOT;

(vi)    certain testimony about materiality is DENIED AS MOOT with respect to evidence of investor losses that Plaintiff does not intend to offer and otherwise DENIED;

(vii)   certain 302 Statements is GRANTED with respect to the proffer sessions on April 3 and June 21, 2013, and DENIED with respect to the session on May 3, 2013 and

(viii)  certain evidence and argument about a cause-and-effect relationship between alleged omissions and the Liberty stock price is GRANTED with respect to demonstrative charts that are unduly suggestive on the issue of materiality and otherwise DENIED.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 226, 229, 232, 235, 239, 267, 270 and 273 and to reflect only the preceding paragraph on the docket.

Dated: November 7, 2022
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE